**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| **INNOVATIVE DISPLAY** | § | |
| **TECHNOLOGIES LLC** | § | |
| | § | |
| | § | **Civil Action No.** |
| **Plaintiff,** | § | **2:14-cv-00106-JRG** |
| | § | |
| | § | |
| **v.** | § | |
| | § | |
| **BMW OF NORTH AMERICA, LLC, &** | § | |
| **BMW MANUFACTURING CO., LLC** | § | **JURY TRIAL** |
| | § | |
| **Defendants.** | § | |

**IDT'S OPPOSITION TO BMW'S MOTION TO TRANSFER VENUE TO THE
DISTRICT OF NEW JERSEY**

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................. 1

II.     LEGAL STANDARD ........................................................................................... 1

III.    BMW'S MOTION TO TRANSFER SHOULD BE DENIED. ................................... 2

        A.      None of the Private Interest Factors Favor Transfer. ........................................ 2

                 1.      The Availability of Compulsory Process Weighs Against Transfer..... 3

                 2.      The Cost of Attendance for Willing Witnesses Clearly Weighs Against Transfer. ......................................................................................... 4

                 3.      At Best, the Relative Ease of Access to Sources of Proof Is Neutral. ... 6

                         a.      BMW's Sources of Proof ................................................. 7

                         b.      IDT's Sources of Proof .................................................. 7

                         c.      Other Sources of Proof ................................................... 8

                 4.      Other Practical Problems Weigh Against Transfer ................................... 9

        B.      None of the Public Interest Factors Favor Transfer ........................................... 9

                 1.      Administrative Difficulties Flowing from Court Congestion Weigh Against Transfer. ................................................................................. 10

                 2.      There is No Local Interest That Favors Transfer ................................. 10

                 3.      The DNJ Does Not Have Any Greater Familiarity with the Governing Law and the  Avoidance of Unnecessary Problems of Conflicts of Laws Does Not Favor Transfer ................................................................ 11

        C.      Considerations of Judicial Economy Weigh Strongly Against Transfer ........ 11

        D.      The Mere Fact that BMWNA is Headquartered in New Jersey Does Not Warrant Transfer .................................................................................. 12

IV.     CONCLUSION ................................................................................................. 13

i

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*In re ASUS Computer Int'l*,
   2014 WL 4460391, No. 2014-141 (Fed. Cir. Sept. 11, 2014) ............................... 5, 6, 7, 11, 12

*In re Eli Lilly and Co.*,
   541 Fed. App'x 993, 2013 WL 5708614 (Fed. Cir. Oct. 18, 2013).......................... 12

*In re Vistaprint, Ltd.*,
   628 F.3d 1342 (Fed. Cir. 2010) ............................................................................. 11

*In re Volkswagen AG*,
   371 F.3d 201 (5th Cir. 2004) ("*Volkswagen I*").................................................... 2, 4

*In re Volkswagen of Am., Inc.*,
   545 F.3d 304 (5th Cir. 2008) ("*Volkswagen II*") ...................................................... 2

*In re Volkswagen of Am., Inc.*,
   566 F.3d 1349 (Fed. Cir. 2009) ("*Volkswagen III*") ............................................... 11

*Ingeniador, LLC v. Adobe Sys. Inc.*,
   2014 WL 105106, No. 2:12-CV-805-JRG (E.D. Tex. Jan. 10, 2014) ................................ 10, 11

*Innovative Display Techs. LLC v. Acer Inc.*,
   2014 WL 4230037, No. 2:13-CV-522-JRG (E.D. Tex. Aug. 26, 2014)............................ 9, 11

*Ivera Med. Corp. v. Hospira, Inc.*,
   2011 WL 1882277, No. 6:10-CV-545 (E.D. Tex. May 17, 2011)................................. 3

*Norman IP Holdings, LLC v. Casio Computer Co., Ltd.*,
   2010 WL 4238879, No. 6:09-CV-270 (E.D. Tex. Oct. 27, 2010) .......................... 3, 5

*NovelPoint Learning v. LeapFrog Enter.*,
   2010 WL 5068146, No. 6:10-CV-229 (E.D. Tex. Dec. 6, 2010) ............................. 3

*Rockstar Consortium US LP v. HTC Corp.*
   2014 WL 3736555, No. 2:13-CV-894-JRG (E.D. Tex. July 29, 2014).................................... 7

*Stragent, LLC v. Pioneer Elecs. (USA) Inc.*,
   2013 WL 8467476, 6:11-CV-278 LED-JDL (E.D. Tex. May 8, 2013) .................................... 3

*Summit 6 LLC v. HTC Corp.*,
   No. 7:14-CV-14-O, Dkt. 143 (N.D. Tex. Sept. 10, 2014) ....................................... 10

*U.S. Ethernet Innovations, LLC v. Ricoh Americas Corp.*,
   No. 6:12-CV-235 (E.D. Tex. Mar. 21, 2013) ........................................................... 5

*Uniloc USA, Inc. v. Distinctive Dev. Ltd.*,
   964 F. Supp. 2d 638 (E.D. Tex. 2013) .................................................................. 10

*Van Dusen v. Barrack*,
   376 U.S. 612 (1964) ............................................................................................ 13

## Statutes

28 U.S.C. § 1404(a) ....................................................................................... 1, 2, 13

## Rules

Fed. R. Civ. P. 45(c)(1)(B)(ii) ........................................................................ 4

## Secondary Sources

Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, and Richard D. Freer, Fed. Prac. &
   Proc. (4th ed. 2013) .................................................................................... 12, 13

Plaintiff Innovative Display Technologies LLC ("IDT") files this brief in opposition to Defendants BMW of North America, LLC ("BMW NA") and BMW Manufacturing Co., LLC's ("BMW MC") (together "BMW") motion to transfer venue to the District of New Jersey ("DNJ").  (Dkt. 22.)

## I.      INTRODUCTION

BMW cannot show that a single relevant factor clearly favors transfer to the DNJ in this case, much less establish that the DNJ as a whole is "clearly more convenient" than the Eastern District of Texas ("EDTX") and that transfer is required "in the interest of justice."  None of the accused products in this patent infringement action are designed or manufactured in New Jersey. BMW has not identified a single relevant non-party witness in New Jersey and has not shown that there are any significant witnesses in New Jersey.  It is also clear that the most relevant documents from BMW are abroad, not in New Jersey.

By contrast, the EDTX has subpoena power over a key non-party witness (one of the three inventors) and is far more convenient for individuals who will actually serve as witnesses. The sole inventor on seven of the nine patents who is also the lead named inventor on the other two patents at issue in this case is nearly one-thousand miles closer to the EDTX than to the DNJ and he has agreed to appear for trial in Texas.  Also, IDT's corporate witness, Marvin Key, is located in the EDTX.  And because this Court has already issued a *Markman* decision construing claim terms in seven of nine patents at issue in this case, there is no question that transfer would create delay and require the expenditure of additional resources from the parties and the courts.

## II.     LEGAL STANDARD

Section 1404(a) provides that "[f]or the convenience of parties and witnesses in the interest of justice, a district court may transfer any civil action to any other district or division

where it might have been brought." 28 U.S.C. § 1404(a).  A party moving to transfer must first show that suit could have been brought in the district to which transfer is sought.  *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*").  Once that threshold is met, the moving party must prove that the transferee venue is "clearly more convenient" than the transferor venue.  *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (*en banc*) ("*Volkswagen II*").  In making this determination, courts consider public and private interest factors related to the convenience of parties and witnesses as well as the particular venues in hearing the case.  These factors are "not necessarily exhaustive or exclusive," and no factor is dispositive.  *Id.* at 314-15.

## III.  BMW'S MOTION TO TRANSFER SHOULD BE DENIED.

### A.  None of the Private Interest Factors Favor Transfer.

The private interest factors cannot help BMW establish that transfer to the DNJ would be "clearly more convenient" given that:  (1) one key non-party witness for whom compulsory process may be necessary is subject to the EDTX's subpoena power, but there are no key witnesses subject to the subpoena power of the DNJ; (2) IDT has identified multiple important willing witnesses for whom the EDTX is more convenient, but BMW has not demonstrated that any of the three witnesses it identified in the DNJ have any likelihood of serving as witnesses at trial; (3) IDT's documents are available in the EDTX, but only some of BMW's documents are in the DNJ and these documents do not include the most relevant documents, which are located abroad; and (4) there will be unavoidable delay if this case is transferred because the DNJ would have to start from scratch, whereas this Court has already construed claim terms in seven of the nine patents asserted and as a result the parties can more economically litigate this case in the EDTX.

## 1.      The Availability of Compulsory Process Weighs Against Transfer.

There is no question that this factor weighs against transfer because at least one key non-party witness—one of the inventors—is subject to the subpoena power of the EDTX and BMW has not identified any specific potential witness over whom the DNJ would have subpoena power.  There is no reason to give any weight to BMW's speculation that the DNJ "would have subpoena power over any former BMW NA employees with relevant knowledge who may still live in the area."  (Dkt. 22 at 11.)  This Court has repeatedly refused to give weight to any witnesses that are not specifically identified.  *Stragent, LLC v. Pioneer Elecs. (USA) Inc.*, 2013 WL 8467476, No. 6:11-CV-278 LED-JDL (E.D. Tex. May 8, 2013) (giving no weight to unidentified witnesses); *Ivera Med. Corp. v. Hospira, Inc.*, 2011 WL 1882277, No. 6:10-CV-545, at *2 (E.D. Tex. May 17, 2011) (same); *NovelPoint Learning v. LeapFrog Enter.*, 2010 WL 5068146, No. 6:10-CV-229, at *6 (E.D. Tex. Dec. 6, 2010) (same); *Norman IP Holdings, LLC v. Casio Computer Co., Ltd.*, 2010 WL 4238879, No. 6:09-CV-270, at *4–5 (E.D. Tex. Oct. 27, 2010) (same).

BMW acknowledged recently in a motion to transfer filed in this Court that in a patent case the key potential non-party witnesses are the inventors and the prosecuting attorney.  (*See* Ex. B-1, BMW of N. Am., LLC's and BMW Mfg. Co., LLC's Mot. & Mem. in Supp. of Mot. to Transfer Venue, *Am. Vehicular Scis. LLC v. BMW Group aka BMWAG*, Case No. 6:12-CV-00411-MHS-JDL, Dkt. 34 at 1, 10 (Mar. 27, 2013).)  None of these witnesses are subject to the subpoena power of the DNJ.  By contrast, publicly available information shows that one of the inventors, Dr. Thomas A. Hough, lives and works in Dallas, Texas, which is adjacent to the EDTX.  (Ex. B-2; Ex. B-3; Ex. B-4.)  Hough is subject to the subpoena power of the EDTX because Rule 45 permits a subpoena where trial will take place "within the state where the

3

person resides, is employed, or regularly transacts business in person" and he "would not incur substantial expense" in traveling from Dallas to Marshall.  FED. R. CIV. P. 45(c)(1)(B)(ii).  There is no reason that Hough would incur substantial expense in traveling the 149 miles from where he lives in Dallas to Marshall.  (Ex. B-5.)

This factor weighs decisively against transfer because one of the key non-party witnesses is subject to the subpoena power of the EDTX and no potential non-party witnesses have been identified that are subject to the subpoena power of the DNJ.

**2.      The Cost of Attendance for Willing Witnesses Clearly Weighs Against Transfer.**

First, a key witness in this case, Jeffery R. Parker, the sole inventor for seven of the nine patents-in-suit who is also the lead named inventor for the other two patents-in-suit, is willing to testify in the EDTX.  (Ex. C, Decl. of J. Parker ¶ 2.)  "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of the convenience to witnesses increases in direct relationship to the additional distance to be traveled."  *Volkswagen I*, 371 F.3d at 204-06.  It would be inconvenient for Parker to travel all the way from Pleasanton, California where he resides to New Jersey, (Ex. C, Decl. of J. Parker ¶ 3), which is nearly 1,000 miles further from Parker's home than is Marshall, Texas, (Ex. B-6).

Second, testimony will be required from IDT's witness Marvin Key.  The EDTX is more convenient for Key who is CEO of IDT, which is located in the EDTX.  (Ex. A, Key Decl. ¶¶ 1-2.)  Key will appear as the corporate representative for IDT in any deposition or at trial in this case, including with regard to the acquisition of the rights, title, and interest in the patents-in-suit by IDT and what was paid for these rights, title, and interest.  (*Id.* ¶ 7.)

4

By contrast, BMW focuses on individuals in New Jersey who at best have only tangentially relevant knowledge.  BMW alleges generally that "key witnesses with information likely to be relevant to the issues of infringement and alleged damages in this case are current and/or former New Jersey employees of BMWNA," but its motion only identifies three specific individuals with relevant knowledge who are potential witnesses.  (Dkt. 22 at 4, 7.)  The Court should disregard these witnesses because, like the defendant in a recent case before the Federal Circuit, BMW has "offered nothing more than speculation that its three employees would actually testify at trial."  *In re ASUS Computer Int'l*, 2014 WL 4460391, No. 2014-141, *1 (Fed. Cir. Sept. 11, 2014).

BMW's arguments for transfer to New Jersey rely on two declarations that name other BMWNA and BMWMC employees, but BMW's motion does not even attempt to implicate these other individuals as witnesses.  (*See, e.g.*, Dkt 22 at Ex. Q, McCraw Decl. at ¶ 6 (identifying six BMWMC corporate employees who reside in New Jersey without stating that they are potential witnesses or demonstrating any connection to the lawsuit).)  BMW has not presented any reason for the Court to weigh the location of these other employees who reside in New Jersey because BMW identified them without providing any basis to determine whether or not they will be actual witnesses in the case.  *See Norman IP Holdings, LLC v. Casio Computer Co., Ltd.*, 2010 WL 4238879, No. 6:09-CV-270, at *4–5 (E.D. Tex. Oct. 27, 2010) (requiring that a party not only identify the name of the witness but at the very least a generalized reason as to why they are relevant); *see also U.S. Ethernet Innovations, LLC v. Ricoh Ams. Corp.*, No. 6:12-CV-235, Dkt. No. 176, at 5 (E.D. Tex. Mar. 21, 2013) (treating the identity of supplier locations as "vague assertions" that render the analysis "speculative" when the moving party failed to identify specific evidence and its relevance).

5

BMW acknowledges that none of the accused products are designed or manufactured in New Jersey.  (Dkt. 22 at 3-4.)  Rather the products are designed and developed outside the United States, primarily in Germany.  (Dkt. 22, Ex. P at ¶¶ 6-7.)  The Federal Circuit has explained that little weight should be given to the convenience of foreign witnesses such as those who would be able to testify about the design and development of the accused products in this case since they "will be required to travel a significant distance no matter where they testify."  *In re Genentech*, 566 F.3d at 1344.  At least some of the accused products, however, are manufactured in Greer, South Carolina by BMW MC and "[m]ost all of the key managers and personnel at BMW MC having knowledge relevant to BMW MC's activities work in the Greer, South Carolina area."  (Dkt. 22 at 5.)  Even if these witnesses were properly identified, their location would not support transfer to the DNJ because there is no significant difference in the distance from Greer to Marshall, Texas (717 miles) or from Greer to Newark, New Jersey (595 miles).  (Ex. B-7.)

Further, even if the Court were to consider the existence of witnesses from BMWNA with technical knowledge, BMW admitted that it has employees in Texas who have the same technical knowledge as employees located in New Jersey.  (Ex. B-8, Nash Dep. 19:3-20:10; 30:6-32:7 (identifying regional technical staff who reside in Texas and have the same understanding as New Jersey employees of how the accused products work); Ex. B, Decl. of A. Alavi, at ¶ 11 (Sept. 15, 2014).)

### 3.    At Best, the Relative Ease of Access to Sources of Proof Is Neutral.

Here, the sources of proof factor does not favor transfer because all of IDT's sources of proof are available in the EDTX yet only some of BMW's documents are in the DNJ and these documents do not include BMW's most relevant documents.  *See In re ASUS Computer Int'l*,

2014 WL 4460391, *1-2 (denying mandamus and crediting district court's determination that "the sources of proof factor slightly disfavored transfer because only some of petitioners' evidence was located in [the venue to which transfer was sought] and all of [the plaintiff's] corporate records had been stored in the [EDTX] long before this complaint was filed"). Moreover, as this Court recognized recently, "given the ease in the modern era of transferring electronic data from one place to another" there is no reason for this factor to weigh any more than "slightly" in the transfer decision. *Rockstar Consortium US LP v. HTC Corp.*, 2014 WL 3736555, No. 2:13-CV-00895-JRG, at *3 (E.D. Tex. July 29, 2014). Certainly, BMW has not shown that more convenient access to sources of proof located in New Jersey would appreciably lessen the burden associated with trial in this case.

### a.      BMW's Sources of Proof

BMW states that the documents for BMW MC are located in Greer, South Carolina, which is not appreciably closer to the DNJ than the EDTX. (Ex. B-7.) Of BMW's U.S. documents, these documents appear most likely to be relevant because accused products are manufactured at that location. (Dkt. 22 at 5.) Though documents for BMWNA are located in New Jersey, these documents are not likely to be particularly relevant because none of the accused products are designed or manufactured in New Jersey. (Dkt. 22 at 3-4.) It is reasonable to assume that the most relevant BMW documents will come from Germany or other foreign sources, where the accused products are designed and manufactured.

### b.      IDT's Sources of Proof

BMW wrongly presumes that IDT's documents are located in Austin. (Dkt. 22 at 10.) All of IDT's documents, which include its documents related to the acquisition of the rights to the patents-in-suit as well as the patent prosecution files and other documents relevant to this

case, are accessible in the EDTX because they are available on servers located in Plano, Texas. (Ex. A, Decl. of M. Key, at ¶ 8.) The only other places they are available are on servers located in Houston, Texas and southern California, neither of which is closer to the DNJ. (*Id.*)

Moreover, there is no reason to discount IDT's connection to the EDTX given the longstanding and extensive ties of IDT's parent company Acacia Research Group LLC with the EDTX. (*Id.* ¶¶ 3-5.) ARG's predecessor became a Texas limited liability company on December 23, 2010. (*Id.* ¶ 3.) ARG or its predecessors have maintained offices in the EDTX since October 2010. (*Id.* ¶ 4.) ARG has ongoing operations in Plano, Texas within the EDTX, where ARG leases 12,137 square feet office space that is used for offices, conference rooms, reception area, and storage. (*Id.* ¶ 5.) ARG also leases additional offsite storage space in Plano. (*Id.* ¶ 5.) ARG currently has twelve employees in Plano, all of whom live in or near the EDTX, and who perform work in the EDTX related to business development, engineering, licensing, management, office management, and administrative functions. (*Id.* ¶ 6.)

### c.   <u>Other Sources of Proof</u>

BMW also presumes that "[r]ecords of conception and reduction to practice will likely be found in Ohio" because that is "where the named inventors are listed as living and where their prosecuting attorney still resides and practices." (Dkt. 22 at 10.) To be clear, however, BMW has not submitted any evidence that these individuals actually have relevant documents in the DNJ. Like BMW's wrong assumption that IDT's documents are located in Austin, this assumption is dispelled by the declaration of Jeffery Parker, the sole inventor on seven of the nine patents-in-suit and the lead named inventor on the other two patents-in-suit. (Ex. C, Dec. of J. Parker ¶¶ 2, 5.) Parker lives and works in Pleasanton, California and he makes clear that he does not have any documents relevant to the patents-in-suit in his possession. (*Id.* ¶ 5.)

8

Certainly, the other inventors will not have any documents related to the seven patents-in-suit for which Parker was the sole inventor and with which they had no involvement. Moreover, it is not reasonable to assume that these individuals will have documents related to the other two patents-in-suit that were not given to the assignee of the patents, much less that such documents would be significant. In any event, BMW's speculation is not sufficient to meet its burden of proof.

### 4.  Other Practical Problems Weigh Against Transfer.

A *Markman* decision has already been issued by this Court construing terms in seven of the nine patents at issue in this case. *Innovative Display Techs. LLC v. Acer Inc.*, 2014 WL 4230037, No. 2:13-CV-522-JRG (E.D. Tex. Aug. 26, 2014). As a result, the parties in this case will be able to streamline discovery and tailor their infringement and invalidity arguments in a way that avoids unnecessary expense to both sides. Whereas this Court has already issued a *Markman* decision, the DNJ would have to start from scratch, both adding unnecessary expenses for the parties and creating delay that would have been avoided in the EDTX.

### B.  None of the Public Interest Factors Favor Transfer.

The parties agree that two of the public interest factors do not favor transfer (familiarity with the relevant law and avoiding unnecessary conflicts of law). There should be no question that the court congestion factor weighs slightly against transfer because objective evidence shows that the median time-to-trial for patent cases in the EDTX is moderately faster than in the DNJ. As for the final local interest factor, BMW has not shown any reason New Jersey has a localized interest in this dispute that should be given any weight.

1.    **Administrative Difficulties Flowing from Court Congestion Weigh Against Transfer.**

This factor weighs slightly against transfer. The most recent evidence available specific to patent cases shows that the median time-to-trial in the EDTX is a full six months faster than the DNJ. (Ex. B-9, Price Waterhouse Coopers 2014 Patent Litigation Study – As case volume leaps, damages continue general decline (July 2014) (showing median time-to-trial for EDTX as 2.21 years compared with 2.71 years for DNJ) (available at http://www.pwc.com/en_US/us/forensic-services/publications/assets/2014-patent-litigation-study.pdf).) Courts have repeatedly found such differences in the median time-to-trial significant for purposes of transfer. *See, e.g.*, Ex. B-10, Mem. Op. & Order, *Summit 6 LLC v. HTC Corp.*, No. 7:14-CV-014-O, Dkt. 143, at 16-17 (N.D. Tex. Sept. 10, 2014) (finding approximately six-month difference in median time-to-trial weighed against transfer); *Uniloc USA, Inc. v. Distinctive Dev. Ltd.*, 964 F. Supp. 2d 638, 651 (E.D. Tex. 2013) (same).

2.    **There is No Local Interest That Favors Transfer.**

The local interest factor is neutral. Because there is no reason to conclude that New Jersey has a cognizable local interest in this dispute, BMW simply rehashes its arguments about the existence of "witnesses and evidence located in Woodcliff Lake." (Dkt. 22 at 12.) There is no reason that New Jersey would have a local interest in this dispute given that the products at issue are not even designed or developed in New Jersey. (*Id.* at 3-4.) Moreover, this Court has made clear that it will not credit an argument like BMW's that boils down to an argument that another jurisdiction "has a localized interest in resolving this dispute because its jurors will be biased toward the defendant." *Ingeniador, LLC v. Adobe Sys. Inc.*, 2014 WL 105106, No. 2:12-CV-00805-JRG, *4 (E.D. Tex. Jan. 10, 2014). This Court explained that "[a] predisposition

toward one party, independent of the merits of the case, cannot be the kind of 'local interest' cognized by the federal rules, and this Court gives this consideration no weight in its analysis." *Id.*

> ### 3.     The DNJ Does Not Have Any Greater Familiarity with the Governing Law and the Avoidance of Unnecessary Problems of Conflicts of Laws Does Not Favor Transfer.

The parties agree that these two factors do not favor transfer.  (*See* Dkt. 22 at 13.)

### C.     Considerations of Judicial Economy Weigh Strongly Against Transfer.

A *Markman* decision has already been issued by this Court construing terms in seven of the nine patents asserted in this case.  *Innovative Display Techs. LLC v. Acer Inc.*, 2014 WL 4230037, No. 2:13-CV-522-JRG (E.D. Tex. Aug. 26, 2014).  By contrast, none of the patents at issue here ever have been asserted in the DNJ.   Accordingly, there is no question that the judicial economy favors keeping this case in the EDTX.  The Federal Circuit has affirmed a district court's consideration of efficiency gains from the same court addressing co-pending cases that involve the same patents even when the co-pending cases were filed after the case that is subject to a transfer motion.  *In re Vistaprint, Ltd.*, 628 F.3d 1342, 1346 (Fed. Cir. 2010).

The Federal Circuit long has explained that judicial economy may be a "paramount consideration when determining whether a transfer is in the interest of justice."   *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009) ("*Volkswagen III*").  In just the last week, the Federal Circuit reaffirmed that "[i]n exercising its discretion in deciding a transfer motion, a district court may, based on a case-specific assessment, conclude that transfer would not promote the interest of justice even if the transferee venue would be slightly more convenient for the parties."  *In re ASUS Computer Int'l*, 2014 WL 4460391, No. 2014-141, *2 (Fed. Cir. Sept. 11, 2014) (citing *In re Vistaprint Ltd.*, 628 F.3d 1342, 1347 n.3 (Fed. Cir. 2010)).

11

Moreover, the Federal Circuit "give[s] considerable deference to a district court's evaluation of the role judicial economy should play in a transfer decision." *In re Eli Lilly and Co.*, 541 Fed. App'x 993, 2013 WL 5708614, *1 (Fed. Cir. Oct. 18, 2013).

Because BMW cannot deny that it would be inefficient to transfer this case to the DNJ, BMW instead argues that this Court should ignore the judicial economy factor here on the grounds that the other cases did not "involve auto manufacturers and hence the claim construction issues in this case could be quite different" and patents at issue here have been asserted in other district courts as well. (Dkt. 22 at 14.) First, whether the accused LCD displays are used in car navigation units (as here) or in computers or cell phones (as in *Acer*), does not change the back-lighting panel technology at issue. Moreover, BMW has not explained any reason this would impact the infringement, invalidity, or claim construction analysis. Second, the fact that the venue statute allows a plaintiff to file suit in a variety of locations is no reason for this Court to ignore the fact that BMW is asking to involve another federal district court. This Court is charged with evaluating whether judicial resources would be better conserved if this case is transferred away from a court that recently construed terms in seven of the nine patents at issue to a forum that has never seen any of them.

### D. The Mere Fact that BMWNA is Headquartered in New Jersey Does Not Warrant Transfer

Essentially, BMW is arguing that this case should be transferred to New Jersey simply because the U.S. headquarters for BMWNA is located there even though there are no clear reasons this case should be litigated in New Jersey rather than Texas. It was once the case that venue over a corporate entity was only proper in the state where the entity was incorporated or in which it kept its principal office. *See* 14D Charles Alan Wright, Arthur R. Miller, Edward H.

12

Cooper, and Richard D. Freer, FED. PRAC. & PROC. § 3811 (4th ed. 2013).  But it has been more than 65 years since Congress expanded the rules defining where venue was appropriate for corporate entities.  *Id.*  At the same time that Congress expanded a plaintiff's options for venue in 1948, Congress also adopted Section 1404(a), which for the first time granted discretion to federal district courts to transfer a case when special circumstances were presented such that transfer to another forum would "prevent . . . waste of time, energy and money and . . . protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Id.* § 3841 (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)).  Here, BMW's motion for transfer does not establish any solid reason this case should be tried in New Jersey and amounts to nothing more than a request that this Court turn back the clock to pre-1948 federal civil procedure and require that this case be litigated in New Jersey for no reason other than the fact that BMWNA is headquartered there.  This is clearly not what Congress intended.

## IV.     CONCLUSION

BMW's motion to transfer should be denied because none of the convenience factors or judicial economy considerations favor transfer to the DNJ.  Here, the sole inventor on seven of the nine patents at issue who is also the lead named inventor on the other two patents is far closer to the EDTX than DNJ and one of the other inventors is subject to the subpoena power of the EDTX.  Moreover, the EDTX has already issued a *Markman* decision construing terms in seven of the nine patents at issue.  Under these circumstances, it is not possible to conclude that the DNJ is "clearly more convenient" and that transfer is required "in the interest of justice."

September 15, 2014                    Respectfully submitted,

                                     /s/ Amir Alavi
                                     Demetrios Anaipakos
                                     Texas Bar No. 00793258
                                     danaipakos@azalaw.com
                                     Amir Alavi
                                     Texas Bar No. 00793239
                                     aalavi@azalaw.com
                                     Brian E. Simmons
                                     Texas Bar No. 24004922
                                     bsimmons@azalaw.com
                                     George W. Webb, III
                                     Texas Bar No. 24003146
                                     gwebb@azalaw.com
                                     AHMAD, ZAVITSANOS, ANAIPAKOS,
                                          ALAVI & MENSING, P.C.
                                     1221 McKinney Street, Suite 3460
                                     Houston, TX 77010
                                     Telephone: (713) 655-1101
                                     Facsimile: (713) 655-0062

                                     **ATTORNEYS FOR PLAINTIFF**

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document was filed electronically in compliance with Local Rules CV-5(a). As such, this document was served on all counsel of record pursuant to Local Rules CV-5(a)(3)(A) and the Federal Rules of Civil Procedure on September 15, 2014.

/s/ *Amir Alavi*
Amir Alavi

15