IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | § | |
|---|---|---|
| INNOVATIVE DISPLAY TECHNOLOGIES LLC, | § § § § | |
| Plaintiff, | § | CASE NO. 2:14-CV-00106-JRG |
| v. | § § § | |
| BMW OF NORTH AMERICA, LLC, ET AL., | § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants' Motion to Transfer Venue Pursuant to § 1404(a) (Dkt. No. 22). The Plaintiff, Innovative Display Technologies, LLC, opposes the motion. Having considered the motion, the parties briefing, and all of the evidence in the record, in light of the applicable law, the Court **DENIES** the motion for the reasons set forth below.

### I.  INTRODUCTION AND BACKGROUND

Plaintiff Innovative Display Technologies, LLC ("IDT") is a corporation based in Plano, Texas and the owner of U.S. Patent Nos. 6,508,563 (the "'563 Patent"), 6,755,547 (the "'547 Patent"), 6,886,956 (the "'956 Patent"), 7,300,194 (the "'194 Patent"), 7,384,177 (the "'177 Patent"), 7,404,660 (the "'660 Patent"), 7,434,974 (the "'974 Patent"), 7,537,370 (the "'370 Patent"), and 8,215,816 (the "'816 Patent") (collectively, the "Patents-in-Suit"). Defendants BMW of North America, LLC ("BMWNA") and BMW Manufacturing Co. ("BMWMC") (collectively, "BMW") are Delaware corporations with headquarters in New Jersey and South Carolina, respectively.

IDT filed this action on February 21, 2014, alleging that BMW infringes the '547 Patent, the '194 Patent, the '177 Patent, the '660 Patent, the '974 Patent, the '370 Patent, and the '816 Patent by "making, using, offering for sale, selling, or importing vehicles (including but not limited to various model years of BMW's 3-series, 5-series and 6-series models) having displays." (Dkt. No. 1 at 5-11.) IDT further alleges that BMW infringes the '563 Patent and the '956 Patent by "making, using, offering for sale, selling, or importing vehicles (including but not limited to various model years of BMW's 323i, 325i, 325xi, 328i, 328xi, 330i, 330xi, 335i, 335xi and M3 Sedans) having lights." (*Id*. at 12-13.)

Approximately four months after this suit was filed, on June 16, 2014, BMW filed this motion to transfer (Dkt. No. 22). BMW contends that the District of New Jersey is a clearly more convenient forum than the Eastern District of Texas. IDT opposes BMW's motion to transfer.

## II. LEGAL STANDARDS

28 U.S.C § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district court or division where it might have been brought." 28 U.S.C. § 1404(a). However, a motion to transfer venue should only be granted upon a showing that the transferee venue is "clearly more convenient" than the venue chosen by the plaintiff. *In re Nintendo Co.*, 589 F.3d 1194, 1197 (Fed. Cir. 2009); *In re Genentech, Inc.*, 566 F.3d 1388, 1342 (Fed. Cir. 2009); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008); *In re Volkswagen of America, Inc. (Volkswagen II)*, 545 F.3d 304, 315 (5th Cir. 2008). District courts have "broad discretion in deciding whether to order a transfer." *Balawajder v. Scott*, 160 F.3d 1066, 1067 (5th Cir. 1998) (quoting *Caldwell v. Palmetto State Sav. Bank*, 811 F.2d 916, 919 (5th Cir. 1987)).

The first inquiry when analyzing a case's eligibility for § 1404(a) transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG* (*Volkswagen I*), 371 F.3d 201, 203 (5th Cir. 2004). If the transferee district is a proper venue, then the Court must weigh the relative public and private factors of the current venue against the transferee venue. *Id.* In making such a convenience determination, the Court considers several private and public interest factors. *Id.* "Factors relating to the parties' private interests include '[1)] relative ease of access to sources of proof; [2)] availability of compulsory process for attendance of unwilling, and [3)] the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and [4)] all other practical problems that make trial of a case easy, expeditious and inexpensive.'" *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568, 581 n.6 (2013) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241, n.6, (1981); *Nintendo*, 589 F.3d at 1198; *Genentech*, 566 F.3d at 1342; *TS Tech.*, 551 F.3d at 1319; *Volkswagen II*, 545 F.3d at 315. "Public-interest factors may include '[1)] the administrative difficulties flowing from court congestion; [2)] the local interest in having localized controversies decided at home; [and] [3)] the interest in having the trial of a diversity case in a forum that is at home with the law.'" *Atl. Marine*, 134 S. Ct. at 581 n.6 (citing *Piper Aircraft*, 454 U.S. at 241 n.6); *Volkswagen I*, 371 F.3d at 203; *Nintendo*, 589 F.3d at 1198; *TS Tech*, 551 F.3d at 1319. Other public factors are: 4) the familiarity of the forum with the law that will govern the case; and 5) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Volkswagen I*, 371 F.3d at 203; *Nintendo*, 589 F.3d at 1198; *TS Tech*, 551 F.3d at 1319. Although the private and public factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is dispositive. *Volkswagen II*, 545 F.3d at 314-15.

In the Fifth Circuit, the plaintiff's choice of venue has not been considered a separate factor in this analysis. *Volkswagen II*, 545 F.3d at 314-15. Still, "[t]he Court must also give some weight to the plaintiffs' choice of forum." *Atl. Marine*, 134 S. Ct. at n.6 (citing *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955)). "Plaintiffs are ordinarily allowed to select whatever forum they consider most advantageous (consistent with jurisdictional and venue limitations), [and the Supreme Court has] termed their selection the 'plaintiff's venue privilege.'" *Atl. Marine*, 134 S. Ct. at 581 (citing *Van Dusen v. Barrack*, 376 U.S. 612, 635 (1964).) The plaintiff's choice of venue has been seen as contributing to the defendant's elevated burden in proving that the transferee venue is "clearly more convenient" than the transferor venue. *Volkswagen II*, 545 F.3d at 315; *Nintendo*, 589 F.3d at 1200; *TS Tech*, 551 F.3d at 1319.

"The idea behind § 1404(a) is that where a 'civil action' to vindicate a wrong—however brought in a court—presents issues and requires witnesses that make one District Court more convenient than another, the trial judge can, after findings, transfer the whole action to the more convenient court." *Van Dusen*, 376 U.S. at 622 (quoting *Cont'l Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960)). "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen*, 376 U.S. at 622). Section 1404(a) requires this discretionary "individualized, case-by-case consideration of convenience and fairness." *Genentech* 566 F.3d at 1346 (quoting *Van Dusen*, 376 U.S. at 622).

## III. ANALYSIS

### A. Proper Venue

The parties do not dispute—and the Court expressly finds—that this case could have been initially and properly brought in the District of New Jersey.

### B. Private Interest Factors:

#### i. *Relative Ease of Access to Sources of Proof*

Despite substantial technological advances in the transportation and delivery of electronic documents, physical accessibility to sources of proof continues to be weighed as a private interest factor. *See Volkswagen II*, 545 F.3d at 316; *TS Tech*, 551 F.3d at 1321; *Genentech*, 566 F.3d at 1345. Nevertheless, the moving defendant bears the burden of establishing that the proposed transferee venue is clearly more convenient than the Eastern District of Texas. *See, e.g.*, *Nintendo*, 589 F.3d at 1197. Vague assertions regarding the volume and location of potential evidence, much of which may be irrelevant to the case, cannot satisfy that burden. *See In re Apple Inc.*, 743 F.3d 1377, 1379 (Fed. Cir. 2014).

To carry its burden, BMW relies on the declarations of Kristine Kent and Sherry C. McCraw. (Dkt. Nos. 22-17 and 22-18.) Ms. Kent is a Real Estate Manager for BMWNA. (Dkt. No. 22-17, at ¶ 2.) Ms. Kent states that "[o]nly in New Jersey does BMWNA create and maintain the documents that may be relevant to this case." (*Id*. at ¶ 10). Ms. Kent specifies that such documents include "sales information and documentation," "marketing and promotional materials," and "technical documents related to the vehicles." (*Id*.) She further states that "[a]ll necessary technical documents for all the automobiles and their systems" and "[m]any of the key technical specifications and manufacturing documents" of BMWMC are kept and maintained in New Jersey. (*Id.* at ¶ 10.) She never specifies if such documents are present in digital or non-

5

digital form. The Court must thus assume they are digital, and subject to transfer easily and electronically, or Ms. Kent surely would have made this important point expressly and forcefully. Ms. Kent states that half (500 out of 1000) of BMWNA's employees are employed directly in New Jersey. (*Id.* at ¶ 4.) Ms. Kent is effectively silent as to where the other half of BMWNA's employees are located: Ms. Kent does state that 20 BMWNA employees are in Texas, though Ms. Kent does not state where these employees are located or what they do. Ms. Kent also declares that all BMW 3-7 series models are produced outside of the United States, primarily in Germany. (*Id.* at ¶ 7.) She also states that BMWNA does not have employees, offices, or documents in this District. (*Id.* at ¶ 4, 7, and 9.)

Ms. McCraw is Vice President, Production Control and Finance, for BMWMC. (Dkt. No. 22-18, at ¶ 1.) She states that BMWMC "creates and maintains all of its documents that may be relevant to this case either at its offices" in South Carolina or New Jersey. (*Id.* at ¶ 8.) Further, she states that BMWMC's "technical manufacturing documents are kept in Greer, South Carolina." (*Id.*) Again, because Ms. McCraw also never specifies if such documents are present in digital or non-digital form, the Court must assume they are digital, and subject to transfer easily and electronically. BMWMC's key managers and personnel with knowledge relevant to this action work in Greer, South Carolina, while several corporate officers work in New Jersey. (*Id.* at ¶¶ 5-6.) Finally, BMW also argues that "[r]ecords of conception and reduction to practice will likely be found in Ohio," because Ohio is where the inventors are listed as living on the face of the patent and the prosecuting attorney lives and works. (Dkt. No. 22, at 10.)

In response, IDT relies on the declaration of its Chief Executive Officer, Marvin Key. (Dkt. No. 28-2, at ¶ 1.) Mr. Key states that "[a]ll of IDT's documents related to the patents-in-suit, which include its documents related to the acquisition of the rights to the patents-in-suit" are

6

available in Texas or California. (*Id*. at ¶ 8.) Acacia Research Group LLC ("ARG"), IDT's parent company, has twelve employees in Plano who "perform work related to business development, engineering, licensing, management, office management, and administrative functions." (*Id*. at ¶ 6.)[1] IDT also identifies two potential non-party witnesses, both inventors, Jeffery R. Parker and Thomas A. Hough. (Dkt. No. 28, at 3-4.) Mr. Parker resides in Pleasanton, California, and Mr. Hough in Dallas, Texas. (*Id*.)

The lack of specificity in BMW's declarations makes it hard for the Court to weigh this factor with certainty, but in an abundance of caution, the Court holds that this factor weighs in favor of transfer.

### ii. *Availability of Compulsory Process*

The second private interest factor is the availability of compulsory process to secure the attendance of non-party witnesses. A venue that has "absolute subpoena power for both deposition and trial" is favored over one that does not. *Volkswagen II*, 545 F.3d at 316. In its motion, BMW speculates that the District of New Jersey may have "subpoena power over any former BMWNA employees with relevant knowledge who may still live in the area." (Dkt. No. 22 at 10-11.) However, BMW fails to identify any specific former employees with knowledge relevant to this case.

On the other hand, BMW does not dispute that Mr. Hough, a non-party and one of the inventors of the Patents-in-Suit, lives and works in Dallas, Texas. (*See* Dkt. No. 29 at 3.) Under Fed. R. Civ. Pro. 45(c)(1)(B), this Court has the power to secure the attendance of Mr. Hough for trial. Accordingly, the Court finds that factor weighs against transfer.

---

[1] The Court notes that from Mr. Key's declaration, it is unclear how, if at all, ARG's Plano employees are either related to IDT or relevant to this suit.

### iii. Cost of Attendance for Willing Witnesses

The third private interest factor is the cost of attendance for willing witnesses. "The convenience of the witnesses is probably the single most important factor in a transfer analysis." *Genentech,* 566 F.3d at 1342. While the Court must consider the convenience of both the party and non-party witnesses, it is the convenience of non-party witnesses that is the more important factor and is accorded greater weight in a transfer of venue analysis. *Aquatic Amusement Assoc., Ltd. v. Walt Disney World Co.*, 734 F. Supp. 54, 57 (N.D.N.Y. 1990); *see also* 15 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3851 (3d ed. 2012). In weighing this factor, "[a] district court should assess the relevance and materiality of the information the witness may provide." *Genentech,* 566 F.3d at 1343.

BMW and IDT have both identified their own employees with potential knowledge on relevant issues in the District of New Jersey and the Eastern District of Texas, respectively. Instead of merely shifting the inconvenience from one party to another, the Court turns to examine the convenience of the identified, willing ***non-party*** witnesses.

BMW blindly speculates that, based only on the locations listed on face of the patent, "it is likely that the third party witnesses, the named inventors and patent attorney, if called to testify at trial, would find it more convenient to travel to Newark, NJ." (Dkt. No. 22, at 8.) The briefing reflects why such generalized speculation is unhelpful. In the intervening years since the patents were filed, two of those inventors have moved: one to Texas and one to California. (Dkt. No. 28, at 3-4.) Further, only one, Mr. Parker, has been identified by either party as a willing witness. Mr. Parker has signed a declaration stating he would be willing to come to Eastern District of Texas. (Dkt. No. 28-15, at ¶ 4). BMW argues that "Mr. Parker has not declared that it would be more difficult for him to travel to New Jersey than Texas" and that

IDT's suits in Delaware on the Patents-in-Suit show that it would not be less convenient for Mr. Parker to travel to New Jersey.[2] (Dkt. No. 29, at 4.) Though BMW is correct in stating that Mr. Parker's declaration is devoid of any mention of New Jersey, such an absence does not indicate his willingness to travel to New Jersey. If he was equally willing to travel to New Jersey, he surely would have said so. He did not. His only statement shows his willingness to travel to East Texas.

Accordingly, this Court finds that factor weighs against transfer.

### iv. *Other Practical Problems*

In deciding whether or not to transfer a case pursuant to § 1404, the Court considers the practical considerations associated with such a transfer, including "those that are rationally based on judicial economy." *Eolas Tech., Inc. v. Adobe Sys., Inc.*, No. 6:09–CV–446, 2010 WL 3835762, at *6 (E.D. Tex. Sept. 28, 2010) (denying a request to sever defendants), *aff'd In re Google, Inc.*, 412 Fed. Appx. 295 (Fed. Cir. 2011). "Motions to transfer venue are to be decided based on the situation which existed when suit was instituted." *In re EMC Corp.*, 501 Fed. Appx. 973, 976 (Fed. Cir. 2013) (internal quotation omitted). Moreover, "[e]ach case turns on its own facts" and the meaningful application of the § 1404 factors to those facts "often creates a reasonable range of choice" in which the district court must exercise its discretion. *In re Vistaprint Ltd.*, 628 F.3d 1342, 1347 (Fed. Cir. 2010).

BMW argues that judicial economy favors transfer because "there is a significant hub of alleged infringing activity with respect to the Defendants' activities in Woodcliff Lake, New Jersey" and "[t]here is therefore no delay or prejudice associated with the transfer of this case." (Dkt. No. 22, at 11-12.) The Court disagrees.

---

[2] The Court observes that Pleasanton, California is approximately 2500 miles from Newark, New Jersey and approximately 1600 miles from Marshall, Texas. (Dkt. No. 28-9.)

9

BMW admits that the BMWNA accused products are produced outside of the United States and the BMWMC accused products are produced in Greer, South Carolina. (Dkt. No. 22, at 3-5.) Further, BMW admits that at least the BMWNA vehicles are distributed nationwide. (*See, e.g.,* Dkt. No. 22-17, at ¶ 5.) Moreover, the displays and lights identified by IDT are designed and manufactured by vendors, which BMW has neither identified nor provided the locations of, and supplied "in assembled form." *See* Dkt. No. 22, at 8. In its complaint, IDT alleges that BMW infringes the Patents-in-Suit by "making, using, offering for sale, selling, or importing" the accused products. (Dkt. No. 1, at 5-13.) Other than the "importing" of the accused products which may be through BMWNA's "Vehicle Preparation Center in Port Jersey, New Jersey," (*see* Dkt. No. 22-17, at ¶ 3), the allegedly infringing activity appears to be occurring far outside of New Jersey. Thus, contrary to BMW's argument and to the extent that a "significant hub of alleged infringing activity" can be tied to any forum, that forum does not appear to be the District of New Jersey.

The Court finds it significant to note that ten days after the filing of this motion, the Court issued a *Markman* decision, in a separate action, construing seven out of the nine patents currently being asserted against BMW. *Innovative Display Techs. LLC v. Acer Inc.*, 2014 WL 4230037, No. 2:13-CV-522-JRG (E.D. Tex. Aug. 26, 2014). The Court observes that BMW's case is but one of a number of suits presently pending before the Court involving several of the Patents-in-Suit. This Court's existing familiarity with the Patents-in-Suit is just the kind of "practical" matter this factor was intended to consider. For the reasons stated above, the Court finds that this factor also weighs against transfer.

### C. Public Interest Factors:

#### i. *Local Interest in Having Localized Interests Decided at Home*

The Court considers the local interest in the litigation because "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Volkswagen I*, 371 F.3d at 206 (5th Cir. 2004). Interests that "could apply virtually to any judicial district or division in the United States," such as the nationwide sale of infringing products, are disregarded in favor of particularized local interests. *Volkswagen II*, 545 F.3d at 318; *TS Tech*, 551 F.3d at 1321.

BMW argues that because of the "substantial bulk of witnesses and evidence located in Woodcliff Lake, and the absence of any substantial business in the Eastern District by any party," the District of New Jersey has a greater interest in the case than the Eastern District of Texas. (Dkt. No. 22, at 12.) While the Court does not necessarily accept BMW's characterization of the evidence or as to venue, the Court does note that IDT is a company with its sole office in the Eastern District of Texas. (Dkt. No. 28-2, at ¶ 2.) Further, ARG, IDT's parent company, has maintained offices in the Eastern District of Texas since October of 2010. (*Id*. at ¶ 4.) The Court finds that the Eastern District of Texas has a local interest in the disposition of the case that is arguably at least equal to that of the District of New Jersey. Accordingly, the Court finds that this factor is essentially neutral.

#### ii. *The Administrative Difficulties Flowing From Court Congestion*

Another public interest factor is court congestion, which favors a district that can bring a case to trial faster. *Genentech*, 566 F.3d at 1347. While neither party expands greatly on this factor, IDT argues, and BMW does not dispute, that the median time-to-trial in the Eastern District of Texas is six months faster than the District of New Jersey. Thus, at least by objective standards,

the Eastern District of Texas can bring this case to a trial faster that the District of New Jersey, and as such, this factor weighs against transfer.

### iii. Familiarity with the Governing Law

Courts also consider "the familiarity of the forum with the law that will govern the case." *Volkswagen I*, 371 F.3d at 203. The Court observes that both districts are familiar with the relevant law. This factor is neutral.

### iv. The Avoidance of Unnecessary Problems of Conflict of Laws

The parties acknowledge that no conflict-of-law questions are expected in this case. This factor is neutral.

## VI. CONCLUSION

After weighing the evidence and the record, as a whole, in light of the applicable law, the Court finds that BMW has failed to carry its burden to show that the District of New Jersey is a clearly more convenient forum than the Eastern District of Texas. Accordingly, BMW's Motion to Transfer Venue (Dkt. No. 22) is **DENIED**.

**So ORDERED and SIGNED this 30th day of March, 2015.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE